IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**DARYL A. ROYSTER,**
    **Plaintiff,**

vs.                                                  Case No: 3:07cv54/MCR/MD

**CAPTAIN RANDY BROWN, et al.,**
    **Defendants.**

## REPORT AND RECOMMENDATION

**Plaintiff**, proceeding *pro se* and *in forma pauperis*, has filed an amended complaint asserting claims under the Civil Rights Act, 42 U.S.C. §1983, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. (Doc. 6). He names five defendants: the National Commission on Correctional Care, and four members of the Escambia County Sheriff's Office ("ESCO"): Sheriff Ron McNesby, Captain Randy Brown, Deputy Dewees and Lieutenant Joye. For the reasons that follow, the undersigned concludes that plaintiff's claims should be dismissed with prejudice as frivolous, and that plaintiff should be sanctioned under Rule 11 of the Federal Rules of Civil Procedure.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this lawsuit on January 31, 2007 by filing a civil rights complaint. (Doc. 1). He claimed that his rights under the Fourteenth Amendment were violated on December 29, 2006 when he was "illegally banned from ECAT [Escambia County Area Transit] buses" due to Deputy Dewees' false report that plaintiff was trespassing. In an order issued February 5, 2007, the court reviewed the substance of plaintiff's claims under due process and equal protection

standards, advising plaintiff that the complaint lacked an arguable basis in law under either theory.  (Doc. 5).  Plaintiff was specifically advised that to state a due process claim, he must identify a fundamental liberty interest at stake, which he failed to do.  He was further advised that his interest in public transportation was not a protected liberty or property interest.   The court referred plaintiff to a Report and Recommendation issued on January 31, 2007 in *Royster v. ECAT*, Case Number 3:06cv550/RV/MD, which recommended dismissal of an identical due process claim based on the same essential facts.[1]  With regard to equal protection, plaintiff was advised that to establish an equal protection violation he must allege that he was treated differently from a similarly situated person based on a constitutionally protected interest, such as race.  He was warned that his complaint failed to identify any similarly situated comparators, and failed to suggest that the treatment he received was based on a constitutionally protected interest.  (Doc. 5, pp. 3-5).

After explaining the foregoing to plaintiff, the court directed him to carefully review the information provided in that order and in the Report and Recommendation in 3:06cv550 to determine whether he could present allegations sufficient to state a cause of action under the relevant law.  <u>Plaintiff was told to voluntarily dismiss this case if he determined that he could not state a colorable claim. Additionally, he was advised that if he proceeded with this action, by signing and filing an amended complaint he was certifying to the court that to the best of his knowledge, information, and belief, formed after reasonable inquiry, the claims therein were warranted by existing law.</u>  (Doc. 5, p. 5).  Despite this warning, plaintiff filed the instant amended complaint two days later, asserting the same claims.

In his amended complaint, plaintiff asserts that on December 29, 2006 Deputy Dewees responded to a call from ECAT concerning a disruptive rider.  (Doc. 6 and Attach.).  "Chuckey," an ECAT supervisor, advised Dewees that plaintiff was abusing ECAT's transfer system.  Dewees asked plaintiff to step off the bus, then advised

---

[1]The primary difference is that in *Royster v. ECAT*, Case No. 3:06cv550/RV, plaintiff named as defendants the Escambia County Area Transit, ECAT's general manager, an ECAT supervisor (Chuck), and six ECAT bus drivers.  Plaintiff claimed his due process rights were violated on December 29, 2006 when "Chuck" banned him from ECAT property.

*Case No: 3:07cv54/MCR/MD*

"Chuckey" to give plaintiff a trespass warning.  "Chuckey" gave plaintiff a trespass warning and told him that he was banned from ECAT property.  Plaintiff tried to explain his side of the story to Dewees, but the deputy told plaintiff he did not want to hear it.  Dewees warned plaintiff that if he came on ECAT property or buses again he would be arrested.  Plaintiff asked Dewees for a ride, but Dewees refused.  As a result, plaintiff "had to walk an estimated 6 or 8 miles, with a bad back, which [plaintiff] had to receive medical treatment on December 30, 2006."  (Doc. 6, p. 3).  Plaintiff filed a complaint with Captain Brown.  Captain Brown found nothing improper about Dewees' conduct. Lieutenant Joye and Sheriff McNesby agreed with Brown's evaluation.  Plaintiff states that "[a]ll four sherriff officer and deputy violated my cons. right by not letting receive due process of law."  (*Id.*) (spelling and grammatical errors in original).  He adds, "[a]ll 4 violated my civil right both due process and equal treatment because he listen to the white man story and didn't listen to my side and I am black. Amen." (*Id.*).  Plaintiff seeks to impose liability against the National Commission on Correctional Care on the grounds that he "warned [the Commission] how that the Escambia County sheriff deputies in Pensacola is violation people constitutional rights and the ADA, so they have actual knowledge of the officer conduct." (*Id.*).  As relief, plaintiff seeks injunctive relief and $100,000.00 in damages.

      On February 16, 2007 this court entered an order directing plaintiff to show cause why he should not be sanctioned for violation of Rule 11(b) of the Federal Rules of Civil Procedure.  (Doc. 7).  The court described the specific conduct that appeared to violate Rule 11(b), namely:  plaintiff submitting to this court an amended complaint presenting claims which he had been warned were not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.  The court further directed plaintiff that his response to the show cause order should also address why a monetary sanction should not be imposed to deter repetition of such conduct.  Plaintiff was warned that his failure to respond to the order would result in a

recommendation of dismissal of this action and the imposition of Rule 11 sanctions. (*Id.,* p. 4).

Plaintiff did not respond to the show cause order.  Instead, he filed an interlocutory appeal. (Docs. 9, 12).  The appeal was dismissed on March 27, 2007 on the grounds that the order was not final or immediately appealable.  (Doc. 22).  On March 30, 2007 the undersigned issued an order directing plaintiff to file a response to the previous order to show cause within thirty days.  (Doc. 23).  Plaintiff was again warned that failure to comply would result in a recommendation of dismissal of this action and the imposition of Rule 11 sanctions.  Again, plaintiff did not respond.

On May 11, 2007 the court issued a notice that a hearing on the issue of Rule 11 sanctions was scheduled for June 7, 2007. (Doc. 25).  In a separate order, plaintiff was ordered to appear. (Doc. 24).  Plaintiff filed a motion to quash those orders, and appealed this court's denial of them. (Docs. 28-34).  The appeal was dismissed, and plaintiff was again advised that the orders were not final and appealable. (Doc. 40).

The day before the scheduled Rule 11 hearing, plaintiff filed a "Motion for Change Jurisdiction," which was denied. (Docs. 38, 39).  He then appealed that order. (Doc. 43).  That appeal is pending.  *See Royster v. Brown*, No. 07-13054-B, http://pacer.ca11.uscourts.gov/dktno.htm.

The Rule 11 hearing did not occur as scheduled due to a family emergency of the undersigned.  Plaintiff was advised in advance that the hearing was being rescheduled.  On June 26, 2007 the court issued a notice that the hearing was rescheduled to July 10, 2007. (Doc. 45).  Plaintiff filed a motion to quash the hearing, arguing that this court lacked jurisdiction over the case due to his pending interlocutory appeal. (Doc. 48).  The court denied the motion, explicitly advising plaintiff that contrary to his contention, his appeal of a non-final order did not divest this court of jurisdiction. (Doc. 49).  The day before the scheduled hearing, plaintiff filed a motion to continue the hearing and a "Motion for Certiorari," both of which were denied. (Docs. 50-53).

On July 10, 2007 the court held the Rule 11 hearing, albeit in plaintiff's absence because he failed to appear. (*See* Minute Entry, 7/10/07).

## DISCUSSION

<u>Dismissal of Plaintiff's Claims as Frivolous</u>

Since plaintiff is proceeding *in forma pauperis*, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under § 1915 "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *Id.* at 327, 109 S.Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

The Fourteenth Amendment to the United States Constitution provides two kinds of due process protections: substantive and procedural. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). A violation of either kind of protection may form the basis for a suit under 42 U.S.C. § 1983. *Id.* The substantive component of due process protects against "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); *see also Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991) (comparing substantive due process to procedural due process). There are two theories under which a plaintiff may bring a substantive due process claim. The first involves the prohibition against the Government's infringement upon certain "fundamental" liberty interests to any degree--no matter what process is provided--unless the infringement is narrowly tailored to serve a compelling governmental interest. *Brown v. Nix*, 33 F.3d 951, 953 (8th Cir. 1994) (citing *Reno v. Flores*, 507 U.S. 292, 301, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993)). Under this theory, a plaintiff must demonstrate deprivation of an identified fundamental liberty interest protected by the Fourteenth Amendment. *Pittsley*, 924 F.2d at 6 (citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626-27, 67 L.Ed. 1042 (1923)); *Tinker v. Beasley*, 429 F.3d 1324, 1327 (11th Cir. 2005) ("The analysis of

any claim to a substantive due process right should begin with a careful description of the asserted fundamental liberty interest." (internal quotation omitted)). Under the second theory, the Government's conduct somehow "must shock the conscience or otherwise offend our judicial notions of fairness, or must be offensive to human dignity." *Brown v. Nix, supra* at 953; *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209-10, 96 L.Ed. 183 (1952).

A violation of procedural due process occurs where the state fails to provide due process in the deprivation of a protected liberty or property interest. *McKinney*, 20 F.3d at 1557; *see* U.S. Const. amend. XIV. Evaluation of a procedural due process claim requires a two-part analysis: (1) has the plaintiff been deprived of a protected interest, and (2) if so, was due process accorded. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153-54, 71 L.Ed.2d 265 (1982). Only upon meeting the threshold requirement of establishing the existence of a protected liberty interest does the analysis proceed to assessing whether plaintiff was deprived of that interest without due process. *See, e. g., Logan*, 455 U.S. at 428.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Thus, to establish an equal protection violation a plaintiff ordinarily shows that the state treated him differently from a similarly situated person based on a constitutionally protected interest. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001).

To state a claim under Title II of the ADA, plaintiff must establish the following: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. 42 U.S.C. § 12132.

**Despite this court twice admonishing plaintiff that his exclusion from a city bus does not touch on a fundamental liberty interest and that his allegations failed to identify a protected liberty or property interest,[2] plaintiff filed the instant amended complaint in which he again asserts a due process violation based solely on his exclusion from the city bus for abuse of the transfer system.[3]  Also, despite this court admonishing plaintiff in this and other cases of the requirements for stating an equal protection claim,[4] he filed the instant amended complaint in which he wholly fails to identify any similarly situated comparators, and fails to suggest that the treatment he received was on account of his race.  Third, despite this court admonishing plaintiff in this and other cases of ADA protections and the**

---

[2] *See* doc. 5; *see also Royster v. ECAT*, Case No. 3:06cv550/RV, doc. 7.

[3] **Plaintiff has not cited to any cases, and this court has found none, in which exclusion from public transportation was held to violate the rider's liberty interests. The only published case which this court's independent research has uncovered which addresses liberty interests in a similar context is *United States v. Madison*, 744 F.Supp. 490 (S.D.N.Y.1990), *rev'd*, 936 F.2d 90 (2nd Cir. 1991). In that case, a defendant who had boarded a bus in a New York City bus terminal and was awaiting its departure for New Jersey was questioned by a police officer who had boarded the bus after him.  In finding that the defendant had been "seized" for purposes of the Fourth Amendment, the court stated that the defendant would have "subject[ed] himself to a significant restriction of his liberty interest in interstate travel had he taken it upon himself to leave the bus and spend another half hour in the Terminal."  *Id*. at 496.  Even assuming that the *Madison* court was correct in suggesting that forcing a passenger to leave an interstate bus could violate the passenger's "liberty interest in interstate travel," plaintiff cannot allege a violation of his liberty interest on this theory. The buses at issue here were local, not interstate buses.  *See also McDaniel v. State of Ohio*, 829 F.2d 39 (6th Cir. 1987) (Table) (affirming dismissal of bus rider's civil rights complaint against public transportation provider for provider's failure to resolve a continuing labor dispute with its employees' union which caused interruption in bus service; bus rider had not alleged the denial of a federally protected right); *Stamm v. New York City Transit Authority*, 2006 WL 1027142 (E.D. N.Y. 2006) (unpublished) (holding that bus rider's pleadings were insufficient to allege that her property or liberty interests were deliberately violated by government conduct, or that the alleged misconduct was so egregious as to otherwise violate substantive due process, where bus rider alleged that bus drivers and subway conductors apparently mistook her, who had no visible disabilities, for a passenger attempting to violate the TA's policy prohibiting non-disabled riders from bringing dogs onto TA vehicles and, in an attempt to effectuate the no-dogs policy, demanded proof of the dog's special status and on one occasion excluded her from riding the bus); *Rodriguez-Sanchez v. Besner*, 2005 WL 878587, at *5 (D. Or. Apr.13, 2005) (unpublished) (holding that, even if the defendant "intentionally excluded [the plaintiff] from public transit for a month," such deprivation would not "touch on a fundamental right or rise to the level of other substantive due process violations courts have found.").**

[4] *See* doc. 5; *see also Royster v. ECAT*, Case No. 3:06cv550/RV, doc. 7.

*Case No: 3:07cv54/MCR/MD*

requirements for stating a claim under 42 U.S.C. § 12132,[5] plaintiff filed the instant amended complaint in which his allegations do not remotely suggest that, even if he qualified as a disabled individual under the ADA, he was excluded from the bus based on his disability.

In sum, all of the claims asserted in plaintiff's amended complaint lack an arguable basis in the law. Therefore, they should be dismissed as frivolous.

**Imposition of Rule 11 Sanctions**

Rule 11 provides that by presenting to the court a pleading or other paper, a person is certifying that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the claims, defenses, and other legal contentions therein are warranted by existing law. Fed. R. Civ. P. 11(b)(2). After careful consideration of plaintiff's submissions and conduct in this case, the court concludes that Rule 11 sanctions against him are appropriate based on his insistence on pursuing patently frivolous claims. As discussed above, at the time plaintiff filed his amended complaint, he had no legal basis to assert that the facts he presented constituted a violation of his federal constitutional rights to due process or equal protection, or a violation of the ADA. Had he engaged in a minimum of research, or simply read the previous orders entered in this and his twenty-some other cases,[6] he would have learned that controlling case law was contrary to his asserted positions. The court finds that an appropriate sanction for plaintiff's conduct is to require him to pay a penalty to the court in the amount of $15.00, an amount the court finds he can afford in spite of his indigent status.

Of final concern to this court, although not the basis of the Rule 11 sanction, are plaintiff's relentless attempts to avoid answering for his conduct, by continuously appealing orders that he knows are not appealable, and by blatantly

---

[5]*See* doc. 5; *see also Royster v. Pate*, Case No. 3:06cv463/RV, doc. 7; *Royster v. ECAT*, Case No. 3:06cv550/RV, doc. 7.

[6]Plaintiff has filed 23 cases in this district court since 2003. All but the current case have been dismissed. Of the 22 dismissed, 21 were dismissed prior to service as either frivolous, for failing to state a claim, or for failing to comply with an order of the court. The one case that was served was eventually dismissed for plaintiff's failure to comply with an order of the court.

*Case No: 3:07cv54/MCR/MD*

disregarding a court-ordered hearing.  His final act in this case of ignoring a court order and refusing to appear is a prime example of his frivolous attitude toward litigation in federal court.  He continues to proceed on the basis of his own personal beliefs rather than the law, in complete disregard of the legal process, and in the face of this court's multiple attempts to explain how his pleadings are deficient, and what he must allege and prove to have a colorable case.  Plaintiff is warned that if he acts in such manner in this court in the future, the consequences will likely be significantly more dire than a modest monetary penalty.

Accordingly, it is respectfully RECOMMENDED:

1.  That plaintiff's claims be DISMISSED WITH PREJUDICE as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

2.  That plaintiff be ordered to pay a $15.00 penalty to the court pursuant to Federal Rule of Civil Procedure 11.

3.  That the clerk be directed to close this file and to not accept any further complaints from this plaintiff until he has paid, in full, his judicial debt of $15.00.

At Pensacola, Florida, this 13th day of July, 2007.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 3:07cv54/MCR/MD*